IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | No.4:Cr-99-89-02 |
| v. | : | No.4:CV-03-2133 |
| | : | |
| KYREE THOMPSON, | : | (Judge McClure) |
| | : | |
| Defendant/ Movant: | | |

# **M E M O R A N D U M**

May 12, 2005

## **BACKGROUND:**

On April 14, 1999, an initial indictment was returned in this criminal matter.
That first indictment did not name Kyree Thompson.  On May 12, 1999, a
superseding indictment was returned charging movant Kyree Thompson, as well as
two co-defendants, with various drug trafficking charges.  On June 19, 1999, a
second superseding indictment was returned.  That indictment included four
counts, only counts one and two of which applied to Thompson.  Count one of the
second superseding indictment charged Thompson, and his two co-defendants,
with conspiracy to possess with intent to distribute in excess of fifty (50) grams of
crack cocaine, in violation of 21 U.S.C. § 846.  Count two of the second
superseding indictment charged Thompson, and his two co-defendants, with

1

possession with intent to distribute in excess of five (5) grams of crack cocaine and aiding and abetting same, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and Title 18 U.S.C. § 2.

Thompson pled guilty to count two of the second superseding indictment on October 29, 1999.

On October 12, 2001, Thompson was sentenced to a term of imprisonment of 140 months.  Thompson appealed our denial of his motion to withdraw his guilty plea, and on September 17, 2002, the United States Court of Appeals for the Third Circuit affirmed Thompson's conviction and sentence.  Next, Thompson petitioned for a writ of certiorari to the United States Supreme Court.  On January 21, 2003, the Supreme Court denied Thompson's petition.

On July 16, 2003, Thompson filed with this court a "Petition for a Writ of Habeas Corpus."  We then issued an order directing Thompson to file a notice of election within forty-five days.  Thompson did not file his notice of election until November 10, 2003.  On November 10, 2003, Thompson asked the court to deem his "Petition for a Writ of Habeas Corpus" a "Motion under 28 U.S.C. § 2255." The government responded to Thompson's motion on April 26, 2004.  On August 16, 2004, after requesting and being granted a continuation of time to file a response, Thompson filed a traverse brief.  On February 18, 2005, Thompson

made a request to amend his motion to include a <u>Booker</u> claim.

For the following reasons we will deny Thompson's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

## DISCUSSION:

### I. Standard of Review

A prisoner who is in custody pursuant to a sentence imposed by a federal court who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255, ¶1; <u>see</u> <u>United States v. Eakman,</u> 378 F.3d 294, 297-98 (3d Cir. 2004).

It is within the court's discretion whether to hold an evidentiary hearing on a § 2255 motion.  <u>See</u> <u>Gov't of the Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989); <u>United States v. Abbott</u>, 975 F.Supp. 703, 712 (E.D. Pa. 1997).  "[T]he district court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." <u>Abbott</u>, 975 F.Supp. at 712 (quoting <u>Gov't of the Virgin Islands v. Bradshaw</u>, 726 F.2d 115, 117 (3d Cir. 1984)).  The court need not hold a hearing if the "motion and the files and  records

conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255, ¶2;

see Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United

States District Courts; United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992).  If

the prisoner's claim presents a close question, "[t]he district court need only

supplement the factual record when the merits of the section 2255 motion may turn

on the truth of a non-frivolous allegation."  Abbott, 975 F.Supp. at 712 (quoting

Bradshaw, 726 F.2d at 117).  Based on the following analysis, the court will not

conduct a hearing because it is apparent that Thompson is not entitled to the relief

he seeks.

## II.  Scope of Thompson's § 2255 & Strickland Ineffectiveness Standard

By pleading guilty, Thompson waived his right to challenge his conviction on

any non-jurisdictional grounds other than the voluntariness of the plea.  See Mabry

v. Johnson, 467 U.S. 504, 508 (1984); United States v. Broce, 488 U.S. 563, 569

(1989); United States v. Jarrett, 334 F. Supp. 2d 810, 813 (W.D. Pa. 2004).  A

defendant who pleads guilty plea may collaterally challenge his conviction on more

limited grounds than a defendant who pleads not guilty.  The collateral review that

post-conviction relief provides is not a substitute for the appeals process.  There

must be respect for the finality of judgments, particularly in the context of a guilty

plea. United States v. Timmreck, 441 U.S. 780, 784 (1979); United States v.

Cleary, 46 F.3d 307, 310 (3d Cir. 1995).

An ineffective assistance of counsel claim may be brought for the first time in a collateral proceeding under § 2255, whether or not that claim could have been raised on direct review.  Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. Davies, 394 F.3d 182, 188 (3d Cir. 2005).  Whether counsel was ineffective in advising a guilty plea requires a determination of whether defendant's plea was knowing and voluntary.  Broce, 488 U.S. at 569; see also Jarrett, 334 F. Supp. 2d at 813.

The two-prong ineffectiveness standard under Strickland applies to post-conviction challenges to guilty pleas.  Id.  The defendant must demonstrate (1) that counsel's performance was objectively unreasonable and (2) that counsel's deficient performance prejudiced the defendant.  Strickland v. Washington, 466 U.S. 668, 687-688 (1984).  In order for a defendant challenging a guilty plea on ineffectiveness grounds to establish prejudice, he must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  In addition to addressing Thompson's argument about the advice he was given in deciding to plead guilty, we will first briefly address Thompson's conflict of interests argument, since as part of that argument he asserts the conflict affected the

voluntariness of his plea.

### III.  Grounds 1 & 3: Ineffective Assistance of Counsel:
### Conflict of Interests & Failure to Take Action

The contours of grounds one and three of Thompson's motion are largely identical and therefore, we will address those grounds together.  In ground one of his motion, Thompson asserts that "defendant was prejudice [sic] by way of counselor that caused a conflict of interest."  In ground three of his motion, Thompson asserts that his counsel took "no action" and failed to provide the defendant a "fair trial."  The supporting facts for the claims illustrate their similarity.

Essentially, Thompson asserts his trial counsel took "no action" on his case because Thompson failed to pay counsel's retainer fees.  Thompson specifically asserts that: "Counsel took no action in regards to fileing [sic] any motions as claimed in his motion to continue the case, so he may have the opportunity to file a pre-trial motion, for discovery and a motion to suppress the evidence, but only for reasons to stall the proceeding so he could retrive [sic] the rest of the retainers fees from me."  (Rec. Doc. No. 404, at 4.)

To support his assertion that a financial dispute existed with counsel, Thompson has provided an August 30, 1999 letter on firm letterhead and signed by his former counsel that states:

> I cannot stress to you the importance of having you or
> someone from your family forward the balance of the
> attorneys fees as soon as possible so that we can
> continue to work on your behalf.  If we do not receive
> any additional monies within the next few days, we will
> have no alternative to withdraw our appearance.
>
> While I certainly do not wish to withdraw my
> appearance, you must understand that this a federal case
> and it should not be taken lightly.

(Rec. Doc. No. 406, Ex. B.)

Thompson also provided the court with a copy of his former counsel's motion to

withdraw and our October 20, 1999 order (Rec. Doc. No. 95), denying that

motion.  (Rec. Doc. No. 406, Ex. C.)

Next, Thompson asserts trial counsel failed to adequately investigate his

case.  He states that "[c]ounsels [sic] desire not to take any action on my behalf,

and properly investigate the case considering know [sic] relevant evidence.

Defendant states, that his co-defendant gave a written statement as to his guilt

stating that the others had nothing to do with the contradand [sic] found in the

vehicle, and counselor failed to investigate this matter."  (Rec. Doc. No. 404, at 4.)

As discussed in more detail in the next section, Thompson also asserts that this

financial conflict motivated counsel to pressure Thompson to plead guilty in order

to quickly dispose of the case.  (See Rec. Doc. No. 406, at 8-9.)

As detailed in the foregoing paragraphs, the crux of Thompson's assertions

are that his counsel represented him despite an actual conflict of interest that arose

not because of counsel's representation of another client, but because of counsel's

pecuniary interests in receiving his fee from Thompson.  Thompson asserts that his

defense counsel's financial conflict with defendant affected his attorney's advice

about the guilty plea because he wanted to "dispose of the case as quickly as

possible."  (Rec. Doc. No. 406, at 8, 9.)  Thompson states that his counsel told

him "pleading guilty would save everyone time and money, and that he did not feel

the need to keep driving back and forth from Philadelphia to Williamsport, for a

case he believe [sic] I would not win."  (Rec. Doc. No. 406, at 9.)  Thompson

asserts that his plea was involuntarily coerced, that he was misled by counsel, and

that he pled guilty because he was scared.  (Rec. Doc. No. 406, at 9-10.)

    In order for Thompson to succeed on an ineffective-assistance claim based

on a conflict of interest, he must show specific instances in the record that

"demonstrate that an actual conflict of interest adversely affected his lawyer's

performance."  Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); United States v.

Preston, 910 F.2d 81, 88 (3d Cir. 1990).  Mere "possibility of conflict is

insufficient to impugn a criminal conviction."  Cuyler, 446 U.S. at 350; Preston,

910 F.2d at 88.

    "Although a 'defendant's failure to pay fees may cause some divisiveness

between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility." United States v. Taylor, 139 F.3d 924, 932 (D.C. Cir. 1998); see United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997); United States v. Zhadanov, 1998 WL 633698, *2 (E.D. Pa. Aug. 11, 1998) (Kauffman, J.); United States v. Wright, 845 F. Supp. 1041, 1072-73 n.35 (D.N.J.) a'ffd, 46 F.3d 1120 (3d Cir. 1994) (table).  A lawyer's pecuniary interests do not create an actual conflict of interest. Furthermore, in our October 20, 1999 order we noted "counsel's continuing obligation to provide zealous representation regardless of the payment, or lack thereof, of the fee."  (Rec. Doc. No. 95, at 4.)

Thompson pled guilty on October 29, 1999 to count two of the superseding indictment.  Later, Thompson repeatedly attempted to withdraw his guilty plea.  In response to Thompson's motion for change of counsel, on March 27, 2001, Thompson's original counsel was removed after an ex parte, in camera hearing. (Rec. Doc. No. 274.)  At the hearing defendant's original counsel also made an oral motion to withdraw as counsel, which was also granted.  Our order indicated that we found Thompson was primarily responsible for whatever problems were present between attorney and client.  (Rec. Doc. No. 274, at 3.)

On May 18, 2001, through his new counsel, and with the court's permission,

9

Thompson again filed a motion to withdraw his guilty plea .  (Rec. Doc. No. 286.)

At that time, Thompson sought to withdraw his guilty plea because (1) he was

innocent of the charges and (2) he was unhappy with his prior counsel's services

and did not fully understand the plea agreement.  In our June 29, 2001 order we

denied the renewed request to remove his plea agreement.  (Rec. Doc. No. 299).

In our June 29, 2001 order we noted that Thompson made only a bald

assertion of innocence and we carefully examined the transcript from Thompson's

October 29, 1999 guilty plea.  After examining the transcript, we noted that at his

change of plea Thompson indicated that he was both satisfied with his original

counsel's representation and that he understood the ramifications of pleading guilty.

(Rec. Doc. No. 299, at 6-12.)

Thompson appealed our denial of his motion to withdraw his guilty plea.

When the Third Circuit affirmed our decision the circuit court noted that:

> [E]xamination of the colloquy between Thompson and
> the District Court demonstrates the meticulous
> examination by the District Court to assure that the
> defendant understood every aspect of the consequences
> of the guilty plea and the plea bargain. We have no basis
> to disagree with the District Court's conclusion that
> Thompson failed to cite sufficient grounds for permitting
> the withdrawal of his plea.

United States v. Thompson, 48 Fed.Appx. 24, 25 (3d Cir. 2002).

The record clearly indicates that Thompson cannot demonstrate that he was prejudiced by his original counsel's performance, the second prong of the Strickland test.  Thompson's new counsel filed a motion to withdraw his guilty plea which was denied and affirmed by the Third Circuit.  When we denied Thompson's motion for withdraw of his guilty plea we carefully documented Thompson's exchange with the court at his guilty plea on October 29, 1999.  The transcript from his change of plea hearing indicates that Thompson was satisfied with his counsel's representation, his plea was voluntary, and that he understood the seriousness of the offenses against him.  (Rec. Doc. No. 297, at 7-22.) Thompson has not presented an actual conflict of interest and has failed to demonstrate prejudice by his original counsel's performance under Strickland's test for ineffectiveness .  Therefore, Thompson's claims as to grounds one and three must fail.

### IV. Ground 2: Ineffective Assistance of Counsel-Specific Advice on Guilty Plea

Under ground two of his petition, Thompson also asserts that his trial counsel coerced and misled him into pleading guilty.  Specifically he states:

> Defendant asserts that he was coerce [sic] and mislead [sic]under many false pretence [sic] by way of counsel. Counsel claims he was contacted by the U.S. Attorney and offer [sic] a plea bargain and that if the defendant

enter a plea of guilty to count two (2) of the indictment he
would be given a sentence of five to seven years for his
guilty plea.

(Mot. Under § 2255, Rec. Doc. No. 404, at 4.)

Thompson appears to focus his objection in his second ground on the advice

about the length of his sentence.  On October 12, 2001, after several attempts to

withdraw his guilty plea and nearly two years after pleading guilty, Thompson had a

140-month sentenced imposed.

In support of his assertion that counsel told him that if he pled guilty to count

two of the superseding indictment he would be given a sentence of five to seven

years, Thompson has included a letter dated August 17, 2001 from his aunt,

Williemae Johnson.  (Rec. Doc. No. 406, Ex. D.)  The letter recounts a three-way

phone conversation in May 2000 between Thompson, counsel, and herself.  She

states that she was a third party "for moral support or my opinion it really wasn't

clear to me at the time."  (Rec. Doc. No. 406, Ex. D.)  In relevant part she states

that Thompson's "lawyer was advising him to except [sic] a deal of 5 to 7 years.

This was on the conditions that he pleaded guilty of said crime. . . .  The lawyer

kept assisting [sic] on [sic] he take the deal or he could in [sic] up doing 15 to 45

years. . . . The lawyer kept telling me to convince my nephew to take the deal and

he would get him time served and parole and I told my nephew to do what ever he

was comfortable with because it was his future on the line not mine or the lawyers."
(Rec. Doc. No. 406, Ex. D.)

Thompson also indicates that his trial counsel advised him: "that he do [sic]
not believe that it was in my best interest to take this case to trial, because of the
area your in, and being part of the influx from Philadelphia (a supply city) to
Williamsport, (a demand city) the court would be prejudice towards you, and there
is no way you would be found innocent of the charges." (Rec. Doc. No. 406, at
8.)

As we noted in the previous section, both this court and the Third Circuit
have already found that Thompson understood the consequences of pleading guilty
during our lengthy colloquy of October 29, 1999. The defendant submitted a
signed statement contemporaneously with his plea. (Rec. Doc. No. 128.) The
second paragraph of that statement stated: "I further understand, that based solely
on my plea of guilty, the Judge could, if he chose, sentence me to the maximum of
forty (40) years or a fine of $2,000,000.00 or both." (Rec. Doc. No. 128, at 1, ¶
2.) The seventh paragraph of defendant's statement stated: "No promises, threats
or any other inducements of any kind have been made to me in regard to my plea of
guilty, apart from the plea agreement." (Rec. Doc. No. 7, at 2, ¶ 7.) Furthermore,
at his plea we advised him that he would face a mandatory minimum sentence of

five years, and that he would likely be sentenced as a career offender as he had a

prior felony conviction for a crime of violence and a prior felony conviction for

drug trafficking. (Rec. Doc. No. 297, at 12.) The plea agreement stated, and the

court explicitly asked defendant, if he understood that none of the

recommendations for sentencing were binding on the court. (Rec. Doc. No. 127, at

5, ¶ 14 & Rec. Doc. No. 297, at 13.) The defendant stated during his plea that he

understood that the contents of the plea agreement were only recommendations to

the court. (Rec. Doc. No. 297, at 13.)

Thompson's argument that his counsel promised him that he would receive

five to seven years is simply not credible in light of his lengthy exchange with the

court at his plea. Furthermore, Thompson already filed, through new counsel, a

motion to withdraw his guilty plea in which he alleged he did not understand his

plea, which was denied by this court, and the Third Circuit affirmed. Therefore,

even if his counsel did promise Thompson that he would receive five to seven

years, he was not prejudiced by his original counsel's performance as set out under

the Strickland test, because the court then clarified at Thompson's plea that the

plea agreement contained only recommendations to the court, that he could receive

a maximum period of incarceration of forty years, and that he would likely be

sentenced as a career offender. Ground two of Thompson's petition is without

merit.

## V.  Motion to Amend § 2255 Motion With Booker Claim

On February 18, 2005, Thompson moved the court to allow him to amend his pending § 2255 so that he may raise a claim under United States v. Booker, – U.S. –, 125 S.Ct. 738 (2005).  (Rec. Doc. No. 448.)  Booker did not expressly state whether it was retroactively applicable to cases that became final before Booker was decided.  Several Courts of Appeals have addressed the issue and have concluded that Booker does not retroactively apply to cases in collateral proceedings.  Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005) ("Booker is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker was issued."); Humphress v. United States, 398 F.3d 855, 857 (6th Cir. 2005) ("Booker . . . does not apply retroactively to cases already final on direct review."); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) ("Booker does not apply retroactively to criminal cases that became final before its release on January 12, 2005."); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005) ("Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review.").

The Third Circuit, in the context of denying a second or successive motion under § 2255 brought by a prisoner seeking to apply <u>Booker</u> retroactively,[1] stated that "there is no combination of Supreme Court decisions that 'dictates' that <u>Booker</u> has retroactive force on collateral review." <u>In re Olopade</u>, 404 F.3d 159, 163 (3d Cir. 2005). The circuit court went on to discuss how the most analogous Supreme Court precedent strongly suggests <u>Booker</u> is not retroactive. <u>Id.</u> (discussing <u>Schriro v. Summerlin</u>, 542 U.S. –, 124 S.Ct. 2519 (2004)). Therefore, <u>Booker</u> is not retroactively applicable to cases on collateral review that were final before the January 12, 2005 decision. <u>See</u> <u>United States v. Wheeler</u>, (M.D. Pa. Apr. 14, 2005) (No. CR-97-094) (Muir, J.). Consequently, Thompson's motion to amend his § 2255 motion with a <u>Booker</u> claim is denied.

---

[1]The text governing retroactivity determinations for second or successive motions under § 2255 is slightly different from the text governing retroactivity for purposes of the statute of limitations on a first motion under § 2255. For purposes of second or successive motions the statute states "a new rule of constitutional law, <u>made retroactive to cases on collateral review by the Supreme Court</u>, that was previously unavailable." 28 U.S.C. § 2255 (emphasis added). For purposes of the statute of limitations on first motions the code states "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and <u>made retroactively applicable to cases on collateral review</u>." <u>Id.</u> (emphasis added). Thus, the statute only explicitly requires that the Supreme Court determine whether a new constitutional rule retroactively applies to second or successive motions under § 2255.

16

## **CONCLUSION:**

For the reasons stated above, we will deny Thompson's  motion under 28

U.S.C. § 2255 to vacate, set aside, or correct his sentence.

                    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | No.4:Cr-99-89-02 |
| v. | : | No.4:CV-03-2133 |
| | : | |
| KYREE THOMPSON, | : | (Judge McClure) |
| | : | |
| Defendant/ Movant: | | |

# **O R D E R**

May 12, 2005

For the reasons set forth in the accompanying memorandum,

## **NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Thompson's  motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is denied.  (Rec. Doc. No. 404.)

2.  Thompson's motion to amend his § 2255 motion is denied. (Rec. Doc. No. 448.)

3.  The Clerk is directed to close the case file docketed to No.4:CV-03-2133.

4.  There is no basis for the issuance of a certificate of appealability.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

1